TEXAS & NEW ORLEANS RAILROAD COMPANY v. FRED REED.

Decided February 17, 1909.

**1.—Master and Servant—Negligence—Contributory Negligence—Pleading.**

Where a flagman at a street crossing was flagging a switch engine on a siding and stepped back on the main track and was struck and injured by a train, his allegations in a suit against the railway company that it was his duty to flag the trains over the crossing and that on the occasion in question he failed to discover the approach of the train which struck him, had the legal effect, standing alone, to establish prima facie negligence on his part as a matter of law; but further allegations that it was also his duty to keep a lookout for the safety of pedestrians at the crossing, that the safety of himself and others required that only one train or engine pass over said crossing at a time; that the passing of more than one rendered it dangerous to them; that the company and its servants owed him the duty to ring the bell on all engines passing the crossing and to sound the whistle on all engines to apprise him of their approach; that a city ordinance required persons in charge of engines to ring the bell continuously while the engines were in motion; that those in charge of the engine which struck him failed to sound the whistle or otherwise signal its approach; that he was the only flagman and could flag only one train at a time; that he did not expect the train to pass the crossing at the same time the switch engine was crossing, and that while engaged in flagging the switch engine the engineer in charge of it caused hot steam to escape upon him thereby frightening and blinding him and causing him to step back and near the time where he was struck by the other engine of the presence of which he was until then unaware, were sufficient to charge negligence on the part of the company and rebut any presumption of contributory negligence which otherwise might have arisen.

**2.—Negligence—Contributory Negligence—Street Crossing—Failure to See Approach of Train.**

Where a flagman at a street crossing was struck and injured by a train passing the crossing, the mere fact that he could have seen the approaching train several hundred feet before it reached the crossing would not prevent a recovery. The jury had the right to take into consideration the facts pleaded and proved by him to excuse his apparent want of ordinary care in not seeing or hearing the approach of the train, and to determine under proper instructions whether in failing to see it he was or was not, under all the circumstances in evidence, guilty of negligence.

**3.—Same—Operation of Trains—Street Crossing.**

Whether it was negligence on the part of the railway in running a train over the street crossing in a city at the same time a switch engine was being flagged across on another track, was an issue for the jury to determine under all the facts and circumstances in evidence.

**4.—Same—Speed of Train—Withdrawal of Issues—Charge.**

Where the court did not submit the speed of the train as one of the grounds of negligence, and instructed the jury that "all allegations of negligence contained in the petition other than those hereinbefore submitted for your consideration are expressly taken from your consideration, and you are not to consider the same or any of the same in arriving at a verdict," this was sufficiently specific to withdraw from the consideration of the jury the speed of the train as a ground of negligence, and it was unnecessary to give a special charge having the same purpose.

**5.—Verdict—Damages—Personal Injuries.**

Verdict for five thousand dollars for personal injuries caused by being struck by a locomotive engine, held not excessive under the facts of this case.

**6.—Contributory Negligence—Charge.**

An instruction that contributory negligence "means a want of ordinary care on the part of a person injured by the actionable negligence of another, combining and concurring with that negligence and contributing thereto as a direct and proximate cause therefor, without which the injury would not have occurred," held, inaccurate, but not misleading in view of an instruction that the plaintiff could not recover if the jury believed from the evidence that at the time he was struck by the engine, or just before that time, he could have discovered the approach of said engine by the use of ordinary care by using his sense of hearing or seeing, or if they believed that an ordinarily prudent person, situated as he was at the time, could or would have discovered the approach of said engine in time to have avoided contact therewith.

Appeal from the District Court of Jefferson County. Tried below before Hon. L. B. Hightower.

*Baker, Botts, Parker & Garwood, Parker & Hefner* and *Will E. Orgain,* for appellant.—The verdict of the jury upon which judgment was rendered is contrary to and unsupported by the pleading of the plaintiff in that it appears from plaintiff's first amended original petition, upon which this case was tried, that it was plaintiff's duty under his employment by defendant at the time of his injury, to discover approaching trains crossing Pearl Street where he was injured, and to prevent accidents there to the public or others occasioned by defendant's trains approaching and crossing said Pearl Street at that point. And it is further apparent from plaintiff's said pleading that he did not discharge his duty in this respect, but that he wholly failed to discover the approach of defendant's train, which struck him, although said train had not only approached said Pearl Street at the place where he was stationed, but at the time it struck plaintiff it had already proceeded nearly across Pearl Street, which he was on duty to guard. Wherefore, it is apparent from plaintiff's allegations that he himself was negligent and failed to exercise his duty to this defendant in discovering the approach of defendant's train, which struck him, in time to prevent accidents at said crossing, and that plaintiff's said negligence and failure to discharge his duty was the sole cause, or at least one of the causes, directly and proximately contributing to his injury, and without which it could not have occurred, and neither directly nor by inference does it appear in any of plaintiff's allegations in his petition that any condition existed or any state of facts that would on its face excuse him for his said negligence and his failure to discharge his duty as aforesaid. International & G. N. Ry. Co. v. Graves, 59 Texas, 332; Texas & P. Ry. Co. v. Fuller, 24 S. W., 1093; St. Louis & S. W. Ry. Co. of Texas v. Branom, 73 S. W., 1065; Turner v. Ft. Worth & Denver City Ry. Co., 30 S. W., 253; Louisville & Nashville Ry. Co. v. Crawford, 8 So. Rep., 245; Clark v. Boston & Albany Ry. Co., 128 Mass., 4.

The allegations of plaintiff below and his own admissions while testifying under oath as a witness in his own behalf, show conclusively that he could have discovered the approach on the main line of the engine by which he was injured in time to have avoided contact therewith by simply looking in the direction of its approach; therefore per-

emptory instructions for defendant should have been given; that part of the charge of the trial court embraced in the fourth assignment amounted in effect to a peremptory instruction, and the jury were not governed by the court's charge. In addition to the authorities cited, see Texas & N. O. Ry. Co. v. Brown, 21 S. W., 425; McDonald v. International & G. N. Ry. Co., 86 Texas, 14; Clark v. Boston & Albany Railroad, 128 Mass., 4; Tomko v. Central R. Co. of New Jersey, 37 New York Supp., 144; McGrath v. St. Louis Transit Co., 94 S. W., 875.

*C. A. Lord* and *McDowell & Duffie,* for appellee.

McMEANS, ASSOCIATE JUSTICE.—This is a suit by the appellee, Fred Reed, plaintiff below, against appellant, Texas & New Orleans Railroad Company, defendant, to recover damages for personal injuries alleged to have been inflicted upon him through the negligence of the defendant. Plaintiff's pleadings upon which the case was tried consisted in his amended petition and a trial amendment which, omitting their strictly formal parts and the allegations as to the nature and extent of the injuries, are as follows: "Plaintiff represents that on or about the 23d day of November, 1905, and for some time prior to that time, he was in the employ of the defendant as a flagman, and on said date was stationed as such flagman on Pearl Street, in the city of Beaumont, where defendant's main line of railroad crosses said street, and it was his duty, among other things, to flag defendant's trains across such crossing, and to keep a lookout for the safety of pedestrians and others along said street. Plaintiff alleges that the said Pearl Street is one of the main thoroughfares and principal streets in the said city of Beaumont, and large numbers of persons are continually passing along the same, especially at its crossing of defendant's railroad, and especially was this the case on said day, and the safety of plaintiff as well as that of persons passing said crossing required that only one train or locomotive pass over said crossing at a time, and that to pass more than one train or locomotive over said crossing at the same time rendered it dangerous to the flagman at such crossing and to persons passing along said crossings; that defendant also has, and did on said date have, a switch track across said Pearl Street only a few feet—about six feet—from said main line of railroad. Plaintiff alleges that on said day, at about 6 o'clock p. m., he was engaged in flagging a switch engine and some cars drawn by it across said Pearl Street on the said switch track, and which was moving over said crossing going in an easterly direction slowly; that in flagging the same over said crossing plaintiff was walking by the side of said switch engine and just north of it, between the switch track and the main track, and was about the center of the said Pearl Street, in the exercise of his duty, as aforesaid, when the engineer of the said switch engine suddenly caused great volumes of hot steam to escape from said switch engine, on the side that plaintiff was, and which struck plaintiff, thereby suddenly frightening plaintiff and blinding and burning him, and plaintiff quickly stepped back out of the way of said steam and toward the main line of railroad; that just as plaintiff so stepped

back, as aforesaid, he was struck by another engine of defendant, which was moving at a high rate of speed along said main line over said crossing, but which locomotive had not been observed by plaintiff and of the approach of which he had no knowledge, and plaintiff says that he did not expect nor anticipate that another engine or train would be caused to pass over said crossing at the time the said switch engine and train were crossing said street, but on the contrary plaintiff expected that no other crossing would be attempted at that time. Plaintiff alleges that defendant, its agents and servants, were guilty of negligence in causing the said train and engine which struck plaintiff as aforesaid to cross said street when it did so; that is, while the said switch engine and its train was crossing said street, in the manner aforesaid; that they were also guilty of negligence in failing to ring the bell on the engine of said train that struck plaintiff and in failing to sound the whistle or other signal to apprise plaintiff of its approach; and plaintiff here now alleges that there was no bell sounded on said engine at said time and place and that such failure to sound said bell was in violation of the laws and ordinances of the said city of Beaumont, to wit, in violation of article 380 of the ordinances of said city, which article is as follows: 'Art. 380. It shall be the duty of every engineer or the person in charge of an engine, to cause the engine bell to be rung continuously whilst the engine or cars are in motion, and every person who shall fail to do so shall be deemed guilty of an offense, and shall be fined, on conviction before the recorder, in any sum not less than five dollars nor more than one hundred ($100) dollars.' And plaintiff here now alleges that there was no whistle sounded for said crossing at said time and place although the duty of defendant, its agents and servants, required the same; that defendant, its agents and servants, were also guilty of negligence in running the said engine and train at a greater rate of speed than six miles per hour, and plaintiff here now alleges that the same was then and there being operated at a much greater rate of speed than six miles per hour, against the ordinance of the said city of Beaumont, where said injury occurred, and in violation of article 379 of the ordinances of the city of Beaumont, which ordinance is as follows: 'Art. 379. It shall be unlawful for any engineer or other person in charge of a locomotive or train to run the same within the corporate limits of the city at a greater rate of speed than six miles per hour, and any person so offending shall, upon conviction before the recorder, be fined in any sum not less than five dollars nor more than one hundred ($100) dollars.' Plaintiff also alleges that defendant's engineer on said switch engine was guilty of negligence in causing the said steam to escape from said engine, in the manner aforesaid, and at the time and place aforesaid."

Defendant pleaded a general demurrer, which does not appear to have been acted on by the trial court, and also pleaded general denial, assumed risk and contributory negligence. The case was tried before a jury, and upon a verdict in favor of plaintiff for $5,000, judgment was entered in his favor for said sum. Defendant's motion for new trial having been overruled, it brings the case before us on appeal.

The evidence warrants us in finding, and, in deference to the verdict, we find the facts to be as follows: On the day plaintiff claims to

have been hurt, he was, and for nearly a month prior thereto had been, in the employment of defendant in the capacity of flagman at the crossing of defendant's railroad over Pearl Street in the city of Beaumont, over which street defendant had two tracks, one being the track of its main line and the other a switch track; and his duties consisted in watching for and flagging trains across the street and to keep a lookout to prevent injuries by engines and trains to persons using the street at that place. Pearl Street is one of the principal and most frequented streets in the city of Beaumont, and on the day in question this latter was particularly true, owing to a parade given by the Masonic fraternity which attracted and drew large numbers of persons to the street so that the town had the appearance of a gala day; and such was the amount of passing over the crossing in question as to be termed by at least one of the witnesses as a congestion of traffic at that point. About six o'clock in the afternoon, when it was getting dark, a switch engine pushing two cars and drawing two others, after whistling for the crossing, came from the west, and plaintiff in the discharge of his duties began flagging this train over the crossing; in the meanwhile waving the crowd back and warning persons to keep off the track, during which time he was walking by the switch engine and facing east, between the switch track upon which the engine was and the unoccupied main track, and when the switch engine reached a point more than half way across the street the engineer caused large quantities of steam to be ejected from the engine upon plaintiff, which burned him and temporarily blinded him, causing him to move quickly out of the way, and in moving he stepped back near the main track and began to wipe his eyes, when another engine drawing a train upon the main line, and also approaching from the west, and of the approach of which plaintiff was unaware, struck plaintiff, knocking him down, rendering him unconscious and causing the injuries for which he sues. It was the custom for operatives upon all engines to sound the whistle for this crossing and continuously ring the bell while approaching and passing over it. As to whether those in control of this last engine gave any signal of its approach by ringing the bell or the blowing of the whistle, the evidence was conflicting; but there was evidence to justify the jury in finding that the bell was not rung and that the whistle was not blown until at the time or just after the plaintiff was struck, and in deference to the verdict we find that neither such signals or other warnings were given by the operatives of the main-line engine to plaintiff in time to warn him of the engine's approach. Plaintiff, by looking down the main line toward the west, could have seen the train several hundred feet before it reached the crossing, but he did not in fact see the train, nor did he know of its proximity until he was struck, nor did he, after he began flagging the switch engine over the crossing, look to see if a train was approaching, because he could flag but one train across at a time, and he was then busily engaged in flagging the switch engine over and in keeping back and preventing injury to persons about to use the crossing. Plaintiff listened for such signals while so engaged, and heard none. He testified that it was the custom while he was there for only one engine or train to pass over the crossing at a time and that he did not expect more. He

did not anticipate that a train would be run over the crossing until the one then on the switch track had passed over. By running the main-line train upon the crossing under the circumstances detailed, without giving warning of its approach, and by causing the steam to be thrown upon plaintiff, thereby inducing him to move away and toward the main line close enough to be struck as he was, the defendant through its employes was guilty of negligence which proximately contributed to the injuries of plaintiff, and plaintiff, by not looking for and discovering the train approaching on the main line, under the circumstances detailed, was not guilty of contributory negligence. The damage sustained by plaintiff was the amount found by the verdict.

By its first assignment of error appellant complains that the verdict and judgment are unsupported by the pleadings of the plaintiff in that it appears therefrom that it was plaintiff's duty, under his employment, to discover trains approaching Pearl Street crossing, and that it is apparent from the pleadings that he did not discharge his duty in that respect, and was therefore guilty of negligence in failing to discover the approach of the train which injured him, and that such failure was, at least, one of the causes that proximately contributed to his hurts; and that neither directly nor by inference does it appear from the allegations of the petition that any condition or state of facts existed that would, on its face, excuse plaintiff for such negligence and his failure to discharge his said duties. By its proposition under this assignment appellant urges "(a) that plaintiff was injured as the result of a known danger against which he was especially employed to protect all persons at the crossing where he was stationed; (b) that plaintiff was injured by stepping back against a locomotive moving across Pearl Street, which he did not know was there, but the approach of which it was his special duty to discover; (c) no facts were alleged by plaintiff to excuse him for his failure to avoid the danger as a result of which he was injured."

By referring to the petition copied in our findings of fact it will be seen that plaintiff alleged that it was his duty, among other things, to flag defendant's trains over the crossing. A necessary inference from this is that he was required to use ordinary care to discover the approach of the trains which it was his duty to so flag. It is further alleged that on the occasion in question he failed to discover the approach of the train which struck him. The legal effect of these allegations standing alone would be to establish *prima facie* negligence on the part of plaintiff as a matter of law, and his petition would have been bad on general demurrer and would not have supported the verdict and the judgment rendered thereon. But the plaintiff went further and alleged other facts to rebut the presumption that would otherwise have arisen upon the allegations above stated. He alleged that it was not only his duty under his employment to flag trains over the crossing, but also "to keep a lookout for the safety of pedestrians and others along said crossing; . . . that the safety of plaintiff as well as that of persons passing said crossing required that only one train or locomotive pass over said crossing at a time, and that to pass more than one train or locomotive over said crossing at the same time rendered it dangerous to the flagman at such crossing and to persons

passing along said crossing. . . . That the defendant, its agents, servants and engineers, owed to plaintiff the duty to ring the bell on all engines passing said crossing and to sound the whistle on all such engines in order to apprise him of the approach thereof," and that the ordinances of the city of Beaumont required persons in charge of engines to cause the bell to be continuously rung while the engine was in motion; that the servants of defendant in control of the engine which struck and injured him failed to sound the whistle or to give other signal of the engine's approach; that plaintiff was the only flagman at said crossing and that he could not flag more than one train at a time, and "that he did not expect or anticipate that another engine or train would be caused to pass over said crossing at the time the switch engine and train were crossing said street, but on the contrary plaintiff expected that no other crossing would be attempted at that time;" that while engaged in flagging that switch engine the engineer of that engine caused great volumes of hot steam to escape upon plaintiff, thereby suddenly frightening and blinding and burning him, causing him, in his efforts to get away, to step back toward and near the main line where he was struck by the other locomotive, of the presence and approach of which he was until then unaware. We think that these allegations were sufficient to charge negligence upon the part of defendant and to rebut any presumption of contributory negligence on the part of plaintiff which otherwise might have arisen on his pleadings. (Gulf, C. & S. F. Ry. v. Shieder, 88 Texas, 152, 162; Missouri, K. & T. Ry. v. Goss, 31 Texas Civ. App., 300.) The assignment is overruled.

The second assignment assails the verdict and judgment on the ground that the undisputed evidence shows that plaintiff was guilty of contributory negligence in failing to discover the approach of the train which struck and injured him. The third assignment complains of the refusal of the court to peremptorily instruct a verdict for defendant. The fourth complains that the verdict was not in harmony with, but is antagonistic to, paragraph seven of the court's charge, which is as follows: "If you believe from the evidence that at the time plaintiff was struck by said engine on the main line, or just before that time, he could have discovered the approach of said engine on said main line to said crossing by the use of ordinary care on his part by using his senses of seeing and hearing, or if you believe that an ordinarily prudent person, situated as plaintiff was at the time, could or would have discovered the approach of said engine on said main line in time to have avoided contact therewith, then you are instructed that the plaintiff can not recover in this case." These three assignments are submitted together over the propositions that "the allegations of plaintiff below, and his own admissions while testifying under oath as a witness in his own behalf, show conclusively that he could have discovered the approach on the main line of the engine by which he was injured in time to have avoided contact therewith, by simply looking in the direction of its approach, therefore (a) peremptory instructions for defendant should have been given; (b) that part of the charge of the trial court embraced in the fourth assignment amounted

in effect to ·a peremptory instruction; and (c) the jury were not governed by the court's charge."

What we have hereinbefore said disposes of the second and third assignments adversely to appellant's contention. From the charge quoted the jury no doubt must have understood their instruction to be what the court evidently intended to instruct them, that if a person of ordinary prudence, circumstanced and situated as plaintiff was, by the exercise of ordinary care would have seen the approaching train in time to have avoided contact with it, then plaintiff would not be entitled to recover. The evidence shows that while it was getting dark, still the approaching train was in plain view of a person standing on or between the tracks, where plaintiff was while flagging the switch engine, if he had looked in that direction. There was nothing there to prevent any one seeing the train if he was looking for it. The jury had the right to take into consideration the facts pleaded and proved by appellee to excuse his apparent want of ordinary care in not seeing or hearing the approach of the train, and it was their province to determine under proper instruction whether plaintiff, in failing to see it, was or was not under all the facts and circumstances in evidence, guilty of negligence. Appellant contends because the undisputed evidence showed that appellee could have seen the approaching train several hundred feet before it reached the crossing, the charge amounted in effect to a peremptory instruction for defendant. We do not so understand the charge, but if it is susceptible of the construction placed upon it by appellant then it is clearly wrong, for it is not the law that, because it may have been possible for a person of ordinary prudence to have seen the approaching train, he would be denied a recovery notwithstanding the evidence might warrant the jury in finding that the failure to see it was excused by the other facts and circumstances set out in our findings. The assignments can not be sustained.

By its seventh assignment appellant complains of the refusal of the court to give its second special charge wherein it sought to have the jury instructed that the uncontroverted evidence showed that the whistle of the engine which struck and injured plaintiff was sounded before plaintiff was struck in time to have avoided the danger of contact with it and to disregard all the allegations of plaintiff as to defendant's failure to sound the whistle or ring the bell, and not hold defendant liable to plaintiff on account of the matters so alleged. It was in proof that the whistle was sounded, but there was a conflict of testimony as to whether this was before or just at the moment plaintiff was struck, or just afterward; and this conflict it was the jury's province to determine under the charge of the court. There was no error in refusing to give the instruction.

By the ninth assignment appellant complains of the refusal of the court to give the sixth special charge requested by it, wherein it sought to have the jury instructed that plaintiff had failed to show by sufficient competent testimony that defendant owed him any duty not to allow two trains to so cross Pearl Street at the same time, or that same was contrary to any rule or regulation upon which plaintiff had a

right to rely. Plaintiff in his petition alleged as one of the grounds of negligence on the part of defendant the running of the main-line train over the crossing at the same time the switch engine was being flagged across. Whether this was negligence was, under all the facts and circumstances, an issue to be determined by the jury, and the court did not err in refusing to take this issue from them. Railway v. Goss, *supra*. The assignment is overruled.

By the tenth assignment appellant complains of the refusal of the court to give its special charge No. 3, which instructed the jury to disregard all allegations of the plaintiff in regard to the speed of the train by which he was injured. The court did not submit the speed of the train as one of the grounds of defendant's negligence, and in its general charge instructed the jury that " . . . all allegations of negligence contained in plaintiff's petition other than those hereinbefore submitted for your consideration, are expressly taken from your consideration, and you are not to consider the same or any of the same in arriving at a verdict in this case." This was sufficiently specific to withdraw from the consideration of the jury the rate of speed of the main-line train as a ground of defendant's negligence, and it was unnecessary to give the special charge. The assignment is overruled.

The court defined contributory negligence as follows: "Contributory negligence, as a law term, means a want of ordinary care on the part of a person injured by the actionable negligence of another, combining and concurring with that negligence and contributing thereto as a direct and proximate cause therefor, without which the injury would not have occurred." The appellant by its eleventh assignment complains that the above definition was confusing and misleading to the jury and conveyed to them no intelligent idea as to what really amounts to contributory negligence. We think the definition is fairly accurate and is neither misleading or confusing. If appellant was not satisfied with it, it should have requested a special charge more accurately defining the term. Not having done so, it can not now be heard to complain.

The twelfth assignment complains that the verdict is excessive. Plaintiff testified that at the time he was hurt he was fifty-five years old and in good health, and his health had been robust for the fifteen years next preceding his injury, during which time he had no occasion for the services of a doctor. Since his injury his general health has been bad. This testimony was undisputed. He further testified that when he was struck by the engine he was rendered unconscious; that he was carried to the hospital, where he remained from the 23d of November to the 26th of December; that his ribs were broken, still ache, and never cease to hurt him; was sore all the time he was in the hospital; that sometimes smothering spells come on him when he lies on his right side, then his side and ribs hurt him; that he had had such trouble since he was hurt, but not before; his chest pains him where he thinks a rib was cracked; his senses of sight and of hearing had been impaired since his injury, but were good before; that after his injury there was a discharge from his head, but in the fall of 1907 something popped in his head, followed by a discharge of yellow water streaked with blood, since which time his hearing has been better;

tried to work as stone cutter, but the jarring caused him such pain as to require him to desist. Before his injury, could do most any kind of work, such as spiking in mines and blacksmith shops, and used a mallet as stone cutter, but has not been able to do such work since; work now affects his breathing and sometimes he can not catch his breath for half an hour. Was never that way before he was hurt. His injuries seem to be growing worse; he is too nervous to do any heavy work, because it hurts his side; he rests very little at night; sleeps probably four hours; can not sleep longer because of the pain in his side and back; suffers now with incontinence of urine, and this trouble is growing worse; has but little strength now in his left arm and shoulder, but before his injury he could carry heavy burdens on his left arm. It was shown by the testimony of R. B. Underhill that plaintiff had worked for him before his injury and was a handy man then, that he tried to work for witness since then, rolling brick, but had to give it up; he made the attempt, and "I saw him reeling and thought he was going over with the wheelbarrow or break in a heap. Fred Reed said he was suffering intensely and he showed it in his looks; showed it by being very pale and weak and could hardly breathe, so he sat down. He was with me off and on for several years before he was hurt and his strength and ability to do work of this kind was as good as any man I ever had." A medical expert testified that he examined plaintiff eleven months after he was hurt and found his respiration and heart's action too fast; that the acceleration of the heart beats he thought was caused by a weakened condition of the nervous system; that if an adult was struck by a locomotive with sufficient force to knock him down, render him unconscious, break one or more ribs and injure him in the back and head, the effect on his nervous system would be to weaken it; that if before such injury he experienced no abnormal frequency in passing urine, and immediately afterwards he did, it is possible that the change from the normal condition could come from the injury. Under this testimony we can not say that the verdict is excessive, and the assignment raising the point is overruled.

We have examined the other assignments presented by appellant not herein specifically mentioned and are of the opinion that no reversible error is pointed out in any of them. The judgment of the District Court is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

On further examination and analysis of the definition of contributory negligence as contained in the charge, we have concluded that the definition is inaccurate. We do not think, however, that the jury could have been misled to appellant's prejudice thereby in view of the instructions contained in paragraph seven of the charge, which is as follows: "You are further instructed that although you may believe from the evidence that the defendant's agents and servants at the time and on the occasion in question were guilty of negligence in attempting, if they did, to make said crossing at said Pearl Street on said main line, while said crossing was being occupied and used by said

switch engine and train, yet, if the plaintiff himself was guilty of contributory negligence, then he can not recover, and if you so find you will let your verdict be for the defendant; that is to say, if you believe from the evidence that at the time plaintiff was struck by said engine on the main line, or just before that time, he could have discovered the approach of said engine on said main line to said crossing by the use of ordinary care on his part, by using his senses of seeing or hearing, or you believe that an ordinarily prudent person, situated as plaintiff was at the time, could or would have discovered the approach of said engine on said main line in time to have avoided contact therewith, then you are instructed that plaintiff can not recover in this case."

In our opinion we found as a fact that plaintiff, by looking down the main line toward the west, could have seen the train several hundred feet before it reached him. In lieu thereof we find as a fact that a person standing on Pearl Street crossing, by looking westward, could have seen a train on the main line at the distance of six hundred or eight hundred yards. Appellant's motion for a rehearing does not point out any sufficient reason for setting aside our decision affirming the judgment of the lower court, and the motion is therefore overruled.

*Overruled.*

Writ of error refused.